UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TRAVIS BUCKHALTER                                                                                    PLAINTIFF

VS.                                                          CIVIL ACTION NO. 3:11-cv-752-CWR-FKB

J.C. PENNEY CORPORATION, INC.                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant J.C. Penney Corporation, Inc.'s ("J.C. Penney") Motion to Dismiss and Compel Arbitration. The Court, after reviewing the pleadings submitted by the parties and the relevant authorities, finds that the motion must be GRANTED.

**I. BACKGROUND**

Travis Buckhalter was hired by J.C. Penney as a Loss Prevention Supervisor at its store in Flowood, Mississippi, on June 1, 2010. He was terminated, less than a year later, on February 16, 2011. He claimed J.C. Penney discriminated against him, and initiated a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In this charge of discrimination, filed on March 3, 2011, Buckhalter claimed that he was fired in retaliation for initiating complaints of race discrimination within the company. He also claimed that he was discriminated against based upon his religion.

The EEOC issued its Notice of Right to Suit. Buckhalter timely filed the instant lawsuit in this Court. J.C. Penney responded by filing a Motion to Dismiss and Compel Arbitration. [Docket No. 7]. It contends that when Buckhalter was hired he "signed" J.C. Penney's Binding Mandatory Arbitration agreement, which states in part:

> I voluntarily agree to resolve disputes arising from, related to, or asserted after the termination of my employment with JCPenney through mandatory binding arbitration under the JCPenney Rules of Employment Arbitration. JCPenney and I voluntarily waive the right to resolve these disputes in courts.

[Docket No. 7-1]. Therefore, according to J.C. Penney, this lawsuit must be dismissed and sent to arbitration.

Buckhalter argues that there is no agreement to arbitrate, and therefore this case should proceed. He makes two assertions in support of this argument. First, he denies that the signature on the arbitration agreement is his. He asserts "that he [n]ever reviewed or signed any arbitration agreement using a physical signature or an 'e-signature'." [Docket No. 16]. Alternatively, he asserts that the agreement is invalid because the alleged agreement "does not bear [his] physical signature . . . but instead an 'e-signature'." [Docket No. 16]. Consequently, his claims and the lawsuit must proceed in court.

J.C. Penney filed its rebuttal. The Court has personal and subject matter jurisdiction and is prepared to rule.

## II. ANALYSIS

The Federal Arbitration Act provides that written provisions for arbitration are valid, irrevocable, and enforceable, and when faced with such an agreement districts courts "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed . . . absent a ground for revocation of the contractual agreement." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 94 L.Ed.2d 158 (1985). Arbitration clauses have been deemed valid, beneficial and enforceable in the employment context. *Circuit City Stores Inc. v. Adam*, 532 U.S. 105 (2001). And, Title VII claims are subject to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991).

In considering a motion to compel arbitration, the Court first must determine whether the parties agreed to arbitrate the dispute in question. Then, the Court must determine whether there is any federal statute or policy which renders the claims non-arbitrable. *Black v. Murphy Oil*

*USA, Inc.*, 1:10cv128, 2010 WL 3717245 (N.D. Miss. September 14, 2010) (citing *Sherer v. Green True Service, LLC*, 548 F.3d 379, 381 (5th Cir. 2008)).  Buckhalter does not argue that there is some policy or statute which would bar the arbitration of his claims.  He simply argues there is no valid agreement.

The question of whether there is a valid agreement to arbitrate is governed by state contract law.  *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004); *Hawthorne v. Trucker Trailer and Equipment, Inc.*, 3:11-cv-518, 2012 WL 3965486 (S.D. Miss. September 11, 2012).  And, the burden of proving a valid contract rests with J.C. Penney.  *Id*., at *2, *citing Iuka Guar. Bank v. Beard*, 658 So.2d 1867, 1371 (Miss. 1995).

"Under Mississippi law, a valid contract must have the 'mutual assent' of the parties." *Hawthorne* at *2, *citing Byrd v. Simmons*, 5 So.3d 384, 388 (Miss. 2009).  "Ordinarily one of the acts forming part of the execution of a written contract is the signing of it [for] . . . [t]he object of a signature is to show mutuality o[f] assent."  *Turney v. Marion Cnty. Bd. Of Educ.*, 481 So.2d 770, 774 (Miss. 1985) (quoting 17 C.J.S. Contracts § 62 (1963)).

The thrust of Buckhalter's argument is two-fold.  He first claims there is no physical signature.  He is correct on that point.  His purported signature was left through electronic means.  An electronic signature, however, is sufficient.  *Blake*, *supra*, at *3, *citing J.M. v. Bailey*, 42 So.3d 618, 622 (2010).  Mississippi has adopted the Uniform Electronic Transactions Act (UETA), which provides that "a signature may not be denied legal effect or enforceability solely because it is in electronic form."  Miss. Code Ann. § 75-12-13 (West 2012).  A physical signature, therefore, is not required.

Buckhalter's second assertion is that the signature is not his.  He contends that J.C. Penney offers no evidence that he signed the document using a computer owned by J.C. Penney.

3

Other than the assertion in his pleading he offers no affidavit, or other admissible evidence, to support this contention.

J.C. Penney, however, has provided substantial evidence that Buckhalter is incorrect. Through testimony of Laura Donovan, Director, Human Resources Information Systems, it explains what each new employee must do once hired. First, the employee must complete the onboarding process which requires the employee to use J.C. Penney's online portal called the Associate Kiosk. *See* Declaration of Laura Donovan in Supp. of Mot. to Dismiss and Compel Arbitration [Docket No. 21-1] at ¶ 3. The employee must formally accept the offer of employment and complete electronic forms containing his personal data. *Id*. Once the employee enters his personal data, he is assigned an employee ID number, which uniquely identifies him during his employment with the company. *Id*. at ¶ 4. Once assigned the employee ID number, the employee is directed to the password kiosk where he creates a confidential password of his choosing which enables him to access the Associate Kiosk and other databases. Importantly, "[n]o one in the Company has access to the password created by the employee, not even the Company's system administrators." *Id*. at ¶ 5. After creating the confidential password, the employee logs back into the Associate Kiosk to complete the onboarding process. He then has to review, complete and/or sign electronically various forms including the Binding Mandatory Arbitration Form ("BMAF"). In fact, some of these forms, including the BMAF, must be signed within a specific time frame. *Id*. at ¶ 8. If the BMAF is not signed within seven days of the hire date, for example, the employee's "employment will be automatically terminated on day eight by the system." *Id*. Although Donovan's declaration is detailed, it only attests to J.C. Penney's

general practice and does not provide testimony of direct knowledge of what happened in this particular case.[1]

But, William Willoughby, the Store Manager of the store wherein Buckhalter was employed, offers testimony regarding circumstances of Buckhalter's hiring and on boarding process. *See* Declaration of William David Willoughby in Supp. of Mot. to Dismiss and Compel Arbitration [Docket No. 21-2]. In particular, Willoughby avers that he hired Buckhalter, and that he was present when Buckhalter began his employment. Buckhalter created a password to utilize the Associate Kiosk, and Buckhalter did not share the password with Willoughby. *Id*. at ¶ 4. Among the documents that Buckhalter signed electronically was the Binding Mandatory Arbitration Agreement. *Id*. at ¶ 5. Willoughby further explained that he knows that Buckhalter completed certain forms and signed them electronically because Willoughby had to complete one of the forms in conjunction with Buckhalter. *Id*. at ¶ 6.

In response to these declarations and affidavit, Buckhalter simply says that he "contests that these mentioned identifiers are not unique and are known by system administrators and human resource personnel." [Docket No. 16]. Furthermore, he contends that J.C. Penney "offers no physical evidence of Buckhalter being at a J.C. Penney owned computer terminal, or present within the J.C. Penney location that this agreement was alleged signed." *Id*. Aside from the fact that Buckhalter's statements are not in the form of admissible evidence, Willoughby's affidavit indeed places him at the kiosk and affixing his electronic signature.

Through great detail, J.C. Penney has set forth the procedures it used to maintain the integrity of the process including that Plaintiff created his own password which was used to

---

[1] Similarly, Kim Koonce, J.C. Penney's Regional Director of Human Resources also submitted an affidavit. Among other things, she avers that once an employee is assigned his ID number and he creates his confidential password, "[n]o one other than the employee whose name is recorded can sign for that employee, and once the electronic signature is made, it cannot be altered or deleted." Affidavit of Kim S. Koonce in Support of Motion to Dismiss and Compel Arbitration [Docket No. 7-1].

access the BMAF as well as the other documents.  Buckhalter does not dispute or offer evidence that he did not create a password, nor does he deny that he used that password to review and electronically sign the other documents.  Moreover, he has not provided any evidence that others had access to his password and used it to retrieve his information and affix his electronic signature.  Without evidence to the contrary, the Court must find that Buckhalter assented to the arbitration agreement and that a valid arbitration agreement existed between the parties.[2]

### III. CONCLUSION

Because a valid and enforceable arbitration agreement exists between the parties, covering the entirety of the present dispute, the Court grants Defendant's Motion to Dismiss and Compel Arbitration.  Plaintiff is ordered to arbitrate his claims and nothing remains to be litigated in this Court.  The Court finds that this case should be dismissed.  Any party may move to re-open this case if further judicial intervention is necessary to enforce the rulings of this Court, or to enforce the rulings of the arbitrator.

Defendant's Motion to Dismiss and Compel Arbitration is therefore, GRANTED.  A separate Final Judgment will issue this day.

SO ORDERED AND ADJUDGED, this the 25th day of September, 2012.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE

---

[2] The Court also finds that J.C. Penney has not waived its right to enforce the Binding Arbitration Agreement. First, Buckhalter was informed of the arbitration agreement on his first day of employment. [Docket No. 21-1]. Secondly, after it was served with the Complaint in this action, J.C. Penney moved to dismiss the action and to compel arbitration. [Docket Nos. 7 & 7-1].